FIRST TRUST COMPANY OF LINCOLN, TRUSTEE, APPELLEE, V. W. BRUCE SHURTLEFF, APPELLANT: BOYD M. RAYNOR ET AL., APPELLEES.

FILED FEBRUARY 28, 1936. No. 29478.

*Flansburg, Lee & Sheldahl,* for appellant.

*Stewart, Stewart & Whitworth, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and CARTER, JJ.

GOSS, C. J.

Aggrieved by the terms of a decree of foreclosure, defendant W. Bruce Shurtleff appeals.

Plaintiff alleged that on July 21, 1932, it was, by certain decrees of the district court for Lancaster county, duly appointed successor trustee to Lincoln Trust Company and to Lincoln Safe Deposit Company; that these concerns had on July 9, 1932, been adjudicated bankrupts by the United States district court at Lincoln, and that, on August 16, 1932, the defendant L. A. Ricketts was duly appointed trustee for the bankrupts. Plaintiff further alleged that the decree appointing it trustee provided that the rights enforced by it in the mortgaged property involved here should be retained by the United States district court and that, by the decrees, plaintiff has succeeded to all the rights, duties and interests of said companies, including the right to bring this action as trustee for the bondholders.

Plaintiff alleged that on December 1, 1925, defendants W. Bruce Shurtleff and Elsa A. Shurtleff, his wife, borrowed $40,000 of the Lincoln Safe Deposit Company and gave their 62 notes or bonds, bearing interest at 6 per cent., interest payable semiannually, and 10 per cent. after maturity, due on various dates, beginning in six months and

the last in five years (with the Lincoln Trust Company as trustee for the holders of said bonds, if held by other parties than the mortgagee), secured by a mortgage on described real estate, but which is commonly known as the Pershing Apartments; that as a part of the same transaction and as further security defendants Shurtleff assigned to the safe deposit company a certain $12,000 note and mortgage held by them on Kansas land, and commonly known as the McDonald mortgage; that later the Shurtleffs conveyed the Pershing Apartments to defendants Raynor and Erickson by a deed in which the grantees agreed to pay the notes and mortgage on the property; that on March 25, 1927, at the request of the Shurtleffs, the safe deposit company reassigned the McDonald mortgage to defendants Shurtleff and in consideration thereof defendant W. Bruce Shurtleff deposited with the safe deposit company $5,000, with the oral agreement (1) that it should draw interest at not less than 5 per cent. from March 25, 1927, until returned to Shurtleff or applied on the loan, (2) that it should be invested by the safe deposit company in investments acceptable to it, and (3) that said sum or investments purchased therewith should be held by the safe deposit company as collateral security for said loan; that thereafter with said sum the safe deposit company purchased certain "participation certificates" (and made some substitutions in these certificates); that on November 21, 1930, defendants Raynor and Erickson entered into extension agreements in writing, extending the maturity dates of bonds, with new coupons evidencing the interest, the last maturity date being extended to December 1, 1932; that as a part of the transaction of extension Raynor and Erickson, as further security, gave a chattel mortgage on the furniture, fixtures and equipment and assigned the rentals; that subsequent to the execution of the original bonds and mortgage the safe deposit company sold and transferred all of the bonds to various persons who are now the owners thereof; that the first 14 bonds, aggregating $6,000, have been paid with interest, that taxes for 1930 and subsequent years are

unpaid and original bonds totaling $34,000 are due and unpaid, so that plaintiff alleged upwards of $37,000 due and prayed foreclosure.

Defendant W. Bruce Shurtleff answered the petition, admitted the execution of the original mortgage, its extension by agreement with Raynor and Erickson, alleged that this extension relieved him from further liability, admitted that $6,000 had been paid on the original bonds, with interest, and that the interest has been paid on the remaining bonds up to December 1, 1931. Then defendant cross-petitions that he applied to the Lincoln Safe Deposit Company for a loan of $40,000, that he was informed the loan was approved for $35,000, but, if he wished $5,000 more, additional security for it would be required; that to secure the extra $5,000, and for that only, he transferred the $12,000 McDonald mortgage and obtained the $40,000 loan; that later the McDonald mortgage was reassigned to him and he deposited $5,000 in cash in accordance with an oral agreement between the safe deposit company and himself that (a) the money was to be held as collateral security for so much of the original loan as exceeded $35,000, and that as soon as the original loan was reduced to $35,000 the $5,000 cash would be returned to him; (b) that he was to receive interest at 6 per cent. semiannually on the $5,000 so long as retained by the company, and (c) that the $5,000 was not to be invested in securities of any type without express permission of Shurtleff; that the original loan was reduced to $35,000, but the safe deposit company refused, on request, to pay the $5,000 to Shurtleff and contrary to the oral agreement converted it and invested it in the participation certificates set out in the petition; that thereafter plaintiff, although it was its duty as trustee to be neutral, conspired with the bondholders to appropriate Shurtleff's $5,000 and interest from March 25, 1927, to date, and appropriated the rentals of the apartments.

In reply to the answer of Shurtleff, plaintiff alleged that in the answer filed by defendants Raynor and Erickson they allege that the real estate is the homestead of the Raynors

and claim that the chattel mortgage and assignment of rents are void and unenforceable; that in their answer said defendants asked that the extension agreements, the assignment of rents and the chattel mortgage be declared null and void and the real estate be declared to be the homestead of defendants Raynor (the transcript here contains no pleading of any kind by defendants Raynor and Erickson); plaintiff alleged that in compromise with said defendants plaintiff entered into a stipulation on December 7, 1933, with them admitting that the chattel mortgage is a first lien, giving plaintiff certain rents from the apartment building and allowing the Raynors to occupy one certain apartment rent free until December 31, 1934; plaintiff denied every allegation of the cross-petition not admitted.

The decree of the court found that the $40,000 bonds and mortgage, the extension agreement, the chattel mortgage and assignment of rents, were executed and delivered as alleged in the petition; that the $12,000 McDonald note and mortgage were transferred and delivered as further security and as a part of the same transaction; "The court finds that subsequent to the execution of said bonds said Lincoln Safe Deposit Company sold and transferred all of said bonds to various persons who are now the owners thereof;" that subsequent to the assignment of the McDonald note and mortgage to the safe deposit company and on March 25, 1927, "when all of said bonds were owned and held by other parties than the Lincoln Safe Deposit Company," Carlsen, then president of the mortgage company, reassigned to Shurtleff the McDonald note and mortgage without the knowledge or consent of the bondholders and accepted in lieu thereof from Shurtleff $5,000 in cash, which Carlsen, without the knowledge or consent of the bondholders, agreed to return to Shurtleff when the indebtedness was reduced to $35,000; that without the consent of Shurtleff the safe deposit company purchased, with the $5,000, participation certificates described in the petition; that by reason of the foregoing the "Lincoln Safe Deposit Company held said participation certificates in lieu of said

McDonald note and mortgage and as further security for said entire indebtedness evidenced by all of said bonds." The decree also found that, if the real estate and chattels on a sale failed to produce enough at sheriff's sale to satisfy the amount due plaintiff, then the plaintiff shall be entitled to a supplemental decree foreclosing Shurtleff's interest in the certificates. The decretal part follows the above find-ings.

Nowhere in its pleadings did plaintiff allege that the $5,000 cash was substituted for the McDonald note and mortgage by Carlsen, representing the safe deposit com-pany, and Shurtleff, representing himself, without authority to Carlsen on the part of the safe deposit company, or of the bondholders. It is not alleged by plaintiff that the mortgagee did not own all the bonds, or that a single bond had been sold, at the time the substitution was made. There is no evidence that at that time any of the bonds had been sold or that the mortgagee did not still own all of the bonds. The evidence as to the ownership of the bonds is contained in a short stipulation made by the parties on the trial to the effect that "the bonds secured by the mortgage on the real estate involved in this action were sold by the original mort-gagee to various parties who are now the owners and hold-ers thereof." There was testimony by Carlsen saying "We didn't have the bonds," but the context shows that he was then being questioned about the Lincoln Trust Company, and that his statement refers to that corporation and not to the safe deposit company. We are of the opinion that the pleadings and the evidence did not justify these particular findings that there was an agreement on the part of Carl-sen, but made without authority, to return the $5,000 when the principal was reduced to $35,000. If he made the agree-ment when the mortgagee still owned the bonds, he had authority to bind the mortgagee.

The serious question here, however, is whether the evi-dence shows that the $5,000 was collateral for the whole $40,000 of the mortgage loan or whether, as Shurtleff claims, it was to be collateral for the first $5,000 of the loan

and was agreed to be returned when the mortgage debt was reduced to $35,000. This is the main issue in the case.

That the $12,000 McDonald mortgage was presumably collateral security for the whole $40,000 original mortgage debt is presumptively fixed by the recital in all of the original bonds signed by Shurtleff and wife describing the McDonald mortgage as collateral security. The assignment by the Shurtleffs of the McDonald mortgage also refers to it as collateral security for the $40,000 loan. As long as the bonds secured by the mortgage were not in the hands of innocent holders but belonged to the safe deposit company, oral testimony could be offered to show that the McDonald mortgage was collateral for only the excess of the mortgage over $35,000. Shurtleff testified in support of what he pleaded in that respect and his testimony on that is opposed by the testimony of Carlsen.

But as to the agreement between Carlsen, representing the mortgagee, and Shurtleff, as to the status of the $5,000, the evidence is quite different. A very convincing piece of evidence is the check itself by which the $5,000 was paid. The check was made by Shurtleff in favor of Lincoln Safe Deposit Company on March 23, 1927, and was cleared and stamped paid the next day. In the upper left-hand corner appears these words in writing: "To be held with Pershing Apt. loan and returned when principal is reduced to $35,000." Mr. Shurtleff is further corroborated in his version that he was to get the $5,000 back when the mortgage was reduced to $35,000 by Boyd M. Raynor. Mr. Raynor testified that, when he had his second interview with Mr. Carlsen, which was in November, 1930, about a renewal of the loan on the Pershing Apartments, he and Carlsen and Shurtleff were negotiating the matter in a back room of the safe deposit company and were discussing the $5,000 which Shurtleff had deposited. He testified: "I am not sure who did the talking, but I can give you the substance of the conversation. It was to the effect that, when the loan was reduced to $35,000 we were to become obligated direct to the Lincoln Trust Company and Mr. Shurtleff was to be out."

Frequently the witnesses and even the attorneys became confused as to Lincoln Trust Company and Lincoln Safe Deposit Company and used one name when it is clear they meant the other. They had the same offices and probably the same officers. Even the check heretofore referred to was indorsed by a stamp that printed the names of both companies. Mr. Raynor probably meant the safe deposit company when he named the other company. At any rate he was clear as to what was the substance of the agreement. The trial court found that Carlsen, as president, agreed to return the $5,000 when the mortgage loan was reduced to $35,000, but that the agreement was without authority because the rights of the bondholders had intervened and therefore Carlsen was without authority. As we have shown, it was neither pleaded nor proved that any of the bonds had been sold when the agreement was made. We find from the evidence that the agreement was made, that Carlsen had authority to make it, that it is enforceable, that the mortgage was reduced to $35,000, that the safe deposit company became trustee for Shurtleff for the return of the $5,000 and interest thereon, or for any investments it made in participation certificates, that plaintiff as successor trustee holds said participation certificates and any income derived from them as trustee for cross-petitioner, Shurtleff, and ought to assign and turn over to him all such certificates and income from them now held by it.

The judgment of the district court is affirmed as to the foreclosure, but as to the $5,000 claimed by Shurtleff, appellant, it is reversed, with directions to enter a decree in accordance with this opinion.

AFFIRMED IN PART AND REVERSED IN PART.